IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DDJ CAPITAL MANAGEMENT, LLC,　　：
on its own behalf and as AGENT FOR　：
THE TERM B LENDERS,　　　　　　：
　　　　　　　　　　　　　　　　：
　　　　　　Plaintiff,　　　　　　：
　　　　　　　　　　　　　　　　：
　　　　vs.　　　　　　　　　　　：　　Case No. 05-cv-873 (GMS)
　　　　　　　　　　　　　　　　：
J. WILLIAM UHRIG, STEVEN　　　 ：
LANGMAN, ROBERT CHAMBERS and　：
LARRY PAVEY,　　　　　　　　　：
　　　　　　　　　　　　　　　　：
　　　　　　Defendants.　　　　　：

**MEMORANDUM OF LAW
IN SUPPORT OF THE DEFENDANTS'
<u>MOTION TO DISMISS THE COMPLAINT</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
Jon E. Abramczyk (#2432)
Lisa Whittaker (#4614)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
　　*Attorneys for Defendants
　　J. William Uhrig, Steven Langman,
　　and Robert Chambers*

*Of Counsel*

SULLIVAN & CROMWELL LLP
Bruce E. Clark
Brian T. Frawley
Jeremy C. Bates
125 Broad Street
New York, New York 10004-2498
(212) 558-4000

February 15, 2006

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

ALLEGATIONS OF THE COMPLAINT......................................................................2

ARGUMENT .........................................................................................................4

I.   Before They Became Creditors, the Lenders Could Not Have Been the
     Beneficiaries of Any Fiduciary Duty........................................................4

II.  Plaintiff's Fiduciary Duty Claim Is Derivative and Barred by Delaware
     Law ......................................................................................................6

     A.   The Lenders' Fiduciary Duty Claim Is Derivative .......................6

     B.   The Lenders' Fiduciary Duty Claim Is Barred by Delaware Law
          and by ARI's Certificate of Incorporation ..................................9

          1.   The Complaint Does Not Allege Breach of a Duty of
               Loyalty ..........................................................................11

          2.   The Complaint Alleges No Intentional Misconduct ......................12

III. The Complaint Lacks Well-Pleaded Allegations That Could Overcome the
     Business Judgment Rule .......................................................................14

CONCLUSION.....................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

Cases

*Arnold v. Society for Savings Bancorp.*,
    650 A.2d 1270 (Del. 1994) ........................................................................................13

*Aronson v. Lewis*,
    473 A.2d 805 (Del. 1984) ..........................................................................................15

*In re Baxter Int'l, Inc.*,
    654 A.2d 1268 (Del. Ch. 1995)............................................................................10, 12

*In re Caremark Int'l Inc. Derivative Litig.*,
    698 A.2d 959 (Del. Ch. 1996)....................................................................................16

*Continuing Creditors' Comm. of Star Telecomms., Inc. v. Edgecomb*,
    385 F. Supp. 2d 449 (D. Del. 2004)...................................................................*passim*

*Credit Lyonnais Bank Nederland v. Pathe Commc'ns Corp.*,
    No. Civ. A. 12150, 1991 WL 277613 (Del. Ch. Dec. 30, 1991) ...............................4, 6

*Emerald Partners v. Berlin*,
    787 A.2d 85 (Del. 2001) ............................................................................................11

*Fleet Nat'l Bank v. Boyle*,
    No. 04CV1277LDD, 2005 WL 2455673 (E.D. Pa. Sept. 12, 2005).........................8, 16

*Geyer v. Ingersoll Pubs. Co.*,
    621 A.2d 784 (Del. Ch. 1992).......................................................................................4

*Guttman v. Huang*,
    823 A.2d 492 (Del. Ch. 2003)................................................................................12, 13

*In re Hechinger Inv. Co.*,
    327 B.R. 537 (D. Del. Bankr. 2005) ..........................................................................14

*IT Litig. Trust v. D'Aniello*,
    No. Civ.A. 04-1268 (KAJ), 2005 WL 3050611 (D. Del. Nov. 15, 2005) ...............7, 15

*Karpus v. Borelli (In re Interpublic Secs. Litig.)*,
    No. 03 Civ. 1194 (DLC), 2004 WL 2397190 (S.D.N.Y. Oct. 27, 2004).....................11

*In re Lukens Inc. S'holders Litig.*,
    757 A.2d 720 (Del. Ch. 1999)..................................................................9–10, 12–13

*Malpiede v. Townson,*
   780 A.2d 1075 (Del. 2001) ............................................................10, 12

*McMillan v. Intercargo Corp.*,
   768 A.2d 492 (Del. Ch. 2000)................................................................13

*Official Comm. of Unsecured Creditors of*
   *Integrated Health Servs., Inc. v. Elkins*,
   No Civ.A 20228-NC, 2004 WL 1949290 (Del. Ch. Aug. 24, 2004)...........................11

*Orman v. Cullman,*
   794 A.2d 5 (Del. Ch. 2002)....................................................................12

*Pereira v. Farace,*
   413 F.3d 330 (2d Cir. 2005).............................................................5, 10, 14

*Production Resources Group, L.L.C. v. NCT Group, Inc.*,
   863 A.2d 772 (Del. Ch. 2004)....................................................... *passim*

*Rafool v. Goldfarb Corp. (In re: Fleming Packaging Corp.)*,
   No. 03-82408, 2005 WL 2205703 (C.D. Ill. Bankr. Aug. 26, 2005)...........................7

*In re Reliance Sec. Litig.*,
   135 F. Supp. 2d 480 (D. Del. 2001) ..........................................................11

*In re Reliance Sec. Litig.*,
   91 F. Supp. 2d 706 (D. Del. 2000)............................................................11

*In re: Submicron Sys. Corp.*,
   432 F.3d 448 (3d Cir. Jan. 6, 2006) ..........................................................7

*In re Tower Air, Inc.*,
   416 F.3d 229 (3d Cir. 2005)....................................................14, 15, 16

*U.S. Bank N.A. v. U.S. Timberlands Klamath Falls, L.L.C.*,
   864 A.2d 930 (Del. Ch. 2004)................................................................4, 5

<u>Statutes and Other Authorities</u>

8 *Del. C.* § 102(b)(7)............................................................................9, 10

8 *Del C.* § 174 ..................................................................................9

Fed. R. Civ. P. 12(b)(6)..........................................................................1

Fed. R. Civ. P. 23.1 .............................................................................1

Defendants J. William Uhrig, Steven Langman, and Robert Chambers (collectively, the "Director Defendants") respectfully submit this Memorandum in support of their motion to dismiss the Complaint ("Compl.") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1.

## PRELIMINARY STATEMENT

DDJ Capital Management LLC ("DDJ"), supposedly for itself and as "agent for the Term B lenders" (the "Lenders"), advances extraordinarily tentative allegations that both ignore pleading standards and seek to overturn established principles of Delaware corporate law. The focus of Plaintiff's grievance is that the Lenders supposedly were provided inaccurate information concerning the financial condition of American Remanufacturers, Inc. ("ARI") while ARI was negotiating a credit agreement (the "Second Lien Credit Agreement") with the Lenders. Yet the Complaint alleges *only* a claim for breach of fiduciary duty — a duty that may have arisen under Delaware law, if at all, only *after* the Lenders extended credit. Therefore, by Plaintiff's own theory, nothing that was said or done to the Lenders before they became creditors of ARI could conceivably give rise to a fiduciary duty claim.

Second, under settled Delaware law, the charges against the Defendants here — three former directors who make this motion as well as a former officer of ARI — allege only derivative claims, because the Defendants owed no fiduciary duties to creditors directly. Whether a corporation is solvent or not, the fiduciary duties of its directors remain to maximize the value of the company for the benefit of its stakeholders. While Delaware courts permit creditors to claim a "stake" when a company is in the "zone of insolvency," that permission does not realign the directors' fiduciary duties to

creditors or allow creditors to sue directly.  Under these circumstances, a fiduciary duty claim — whether by a shareholder or a creditor — alleges only a derivative claim.

Third, Plaintiff's derivative claim here is barred by Delaware law and ARI's certificate of incorporation.  In accordance with settled Delaware law, ARI's certificate of incorporation bars a fiduciary duty claim that is not premised on a breach of a duty of loyalty or on intentional misconduct.  The Complaint alleges no such breach or misconduct by the Director Defendants.

Last and in any event, a complaint challenging acts or omissions by directors of a Delaware corporation must plead facts demonstrating that the directors' actions are outside the presumptive protection of the business judgment rule.  Plaintiff's pleading fails to allege any facts that could overcome the business judgment rule.

## ALLEGATIONS OF THE COMPLAINT

Purporting to act "on its own behalf and as agent for the Term B Lenders" (Compl. preamble), DDJ brought this action against defendants J. William Uhrig, Steven Langman, Robert Chambers, and Larry Pavey (taken together, the "Defendants"), alleging a single claim for breach of fiduciary duty under Delaware law.  Uhrig, Langman, and Chambers are alleged to have been directors of ARI.  (Compl. ¶¶ 7–9).

The Complaint alleges three theories in support of some supposed breach of fiduciary duty.  First, DDJ alleges "[u]pon information and belief" (Compl. ¶¶ 21, 22) that in negotiating the Second Lien Credit Agreement, the Director Defendants provided the Lenders information that "Defendants knew or should have known . . . was materially false or misleading" (Compl. ¶ 22).  The sole fact alleged in support of this assertion is that, sometime prior to March 2005, someone — Plaintiff does *not* say which of the

-2-

Defendants — provided DDJ with misstated financial information. (Compl. ¶ 20). Plaintiff contends that Defendants represented that "for the fiscal *year ending December 31, 2004* ARI's EBITDA was materially positive in the amount of $20 million or more," but that, in June 2005, Defendants provided the Lenders information that "reflected that ARI's total reported and adjusted EBITDA *for the year to date* was zero or negative." (Compl. ¶¶ 20, 28 (emphases added)). Plaintiff nowhere explains why, if at all, ARI's *2004* financial statements were materially misleading.

Second, and also "[u]pon information and belief" (Compl. ¶¶ 24, 25), Plaintiff contends that, after the Lenders signed the Second Lien Credit Agreement, "Defendants" provided the Lenders further information about ARI that "Defendants knew or should have known . . . was materially false or misleading" (Compl. ¶ 25). The Complaint nowhere explains, however, (i) what "information" was provided, (ii) who provided it, and on what date, (iii) what was inaccurate about the information, or (iv) how, if at all, that supposedly misstated information harmed the Lenders. Indeed, the only "injury" hinted at in the Complaint is ARI's inability to meet its "obligations" under the Second Lien Credit Agreement. (Compl. ¶¶ 29, 37). But such an injury could not possibly have been caused by anyone providing the Lenders with allegedly misleading information after they already had extended the loan.

Third, the Complaint alleges that ARI was mismanaged. Plaintiff says "Defendants" breached their fiduciary duty by "improperly regulating the Debtors' inventory" and by "allowing the Debtors to enter into contracts for the sale of their products at prices that had an immediate and disastrous effect on the Debtors' working capital, cash flow and financial condition." (Compl. ¶ 36).

-3-

## ARGUMENT

### I.    BEFORE THEY BECAME CREDITORS, THE LENDERS COULD NOT HAVE BEEN THE BENEFICIARIES OF ANY FIDUCIARY DUTY.

Under Delaware law, "directors do not owe creditors duties beyond the relevant contractual terms absent 'special circumstances.'" *Geyer v. Ingersoll Pubs Co.*, 621 A.2d 784, 787 (Del. Ch. 1992). Among the circumstances that may raise the possibility of some duty imposed by law with respect to creditors is the insolvency of the debtor. *Id.* "[W]hen the insolvency exception does arise, it creates fiduciary duties for directors for the benefit of creditors." *Id.* This is so because, if a corporation is insolvent, "a board of directors is not merely the agent of the residue risk bearers, but owes its duty to the corporate enterprise" — that is, "the community of interests that the corporation represents." *Credit Lyonnais Bank Nederland v. Pathe Commc'ns Corp.*, No. Civ. A. 12150, 1991 WL 277613, at *34 & n.55 (Del. Ch. Dec. 30, 1991) (Allen, Ch.).

By its terms, therefore, the so-called "insolvency exception" cannot apply to the facts alleged here. First, there is no adequate allegation that ARI was insolvent at the time of the challenged events. Delaware courts have accepted two tests for evaluating insolvency. "First, a company is insolvent if it is unable to pay its debts as they fall due in the usual course of business. Second, a company may be insolvent if it has liabilities in excess of a reasonable market value of assets held." *U.S. Bank N.A. v. U.S. Timberlands Klamath Falls, L.L.C.*, 864 A.2d 930, 947–48 (Del. Ch. 2004) (footnotes and internal quotation marks omitted), *vacated on other grounds*, 875 A.2d 632 (Del. 2005). Here, instead of alleging facts showing that ARI was insolvent under either of these standards at the time that the Second Lien Credit Agreement was signed in March 2005, the Complaint alleges that as of June 2005, ARI's year-to-date earnings before

-4-

interest, taxes, depreciation and amortization ("EBITDA") were "zero or negative." (Compl. ¶ 28). This utterly fails to allege insolvency, as DDJ effectively concedes by then conclusorily alleging, again "[u]pon information and belief," that "the Debtors were insolvent or approaching insolvency when the Second Lien Credit Agreement was . . . executed." (Compl. ¶ 32). Nowhere does the Complaint say that ARI ever failed to pay a debt when due, or that ARI's liabilities ever exceeded its assets. *Compare U.S. Bank*, 864 A.2d at 948 (finding that allegations regarding both failure to pay interest due and "gross disparity" between assets and liabilities raised "issue of material fact as to whether the company was insolvent, or in the zone of insolvency").

Second, the Director Defendants could not have owed the Lenders any legal duties until ARI was in the "zone of insolvency" *and* the Lenders were its creditors. *Pereira v. Farace*, 413 F.3d 330, 342 (2d Cir. 2005) ("corporate . . . directors owe fiduciary duties to creditors when a corporation is insolvent in fact"). Here, there is no dispute that the Lenders did not become creditors of ARI until sometime on or after March 22, 2005. (Compl. ¶ 2). The Complaint, however, identifies no supposedly inaccurate information that was provided to the Lenders *after* they became creditors of ARI and before they allegedly were told the truth in June 2005. (Compl. ¶ 28). Indeed, the focus of Plaintiff's pleading is a wholly inadequate claim that the Lenders were damaged as a result of receiving inaccurate information *before* they became creditors. (Compl. ¶ 21). While Plaintiff suggests in passing that the Lenders might have been provided misleading financial information after they executed the credit agreement (Compl. ¶ 24), that conclusory assertion lacks any factual foundation. Moreover,

Plaintiff offers no explanation or theory as to how misleading financial information delivered after a loan was made could possibly have caused the Lenders any injury.

In sum, DDJ does not allege that after the Lenders became creditors of ARI, they received any material misrepresentation from the Director Defendants that caused them injury. It is first and foremost for this reason that the fiduciary duty claim fails as a matter of law.

## II.     PLAINTIFF'S FIDUCIARY DUTY CLAIM IS DERIVATIVE AND BARRED BY DELAWARE LAW.

The fiduciary duties imposed by Delaware law on the directors of an insolvent corporation are not owed to any creditor directly but instead are owed to "the community of interests that the corporation represents." *Credit Lyonnais*, 1991 WL 277613, at *34 n.55. Insolvency does not give rise to new or different duties, but merely makes creditors beneficiaries, along with shareholders, of the traditional duty "to maximize the economic value of the firm." *Production Resources Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 791 (Del. Ch. 2004). A creditor may bring a claim for breach of the fiduciary duty, if at all, only because insolvency "changes the class of those eligible to press the claim derivatively, by expanding it to include creditors." *Id.* at 793.

### A.     The Lenders' Fiduciary Duty Claim Is Derivative.

Under the so-called "trust fund doctrine," Delaware law grants standing to creditors of a corporation in the "zone of insolvency" to bring claims asserting that the directors or officers of a corporation harmed the corporation to the detriment of the

creditors. *Production Resources*, 863 A.2d at 790–92.[1]  The doctrine does not impose

new or different obligations on the directors, but merely extends standing to creditors to

allege a derivative breach of fiduciary duty claim:

> [B]ecause of the firm's insolvency, creditors would have standing to assert that the self-dealing directors had breached their fiduciary duties by improperly harming the economic value of the firm, to the detriment of the creditors who had legitimate claims on its assets. . . .  In other words, even in the case of an insolvent firm, poor decisions by directors that lead to a loss of corporate assets and are alleged to be breaches of equitable fiduciary duties remain harms to the corporate entity itself.  Thus, regardless of whether they are brought by creditors when a company is insolvent, these claims remain derivative, with either shareholders or creditors suing to recover for a harm done to the corporation as an economic entity and any recovery logically flows to the corporation and benefits the derivative plaintiffs indirectly to the extent of their claims on the firm's assets.

*Id.* at 792 (footnote omitted); *see IT Litig. Trust v. D'Aniello*, No. Civ.A. 04-1268 (KAJ),

2005 WL 3050611, at *8 n.10 (D. Del. Nov. 15, 2005).

     "A claim charging directors of a corporation with breach of fiduciary duty

is a classic derivative claim."  *Rafool v. Goldfarb Corp. (In re: Fleming Packaging

Corp.)*, No. 03-82408, 2005 WL 2205703, at *3 (Bankr. C.D. Ill. Aug. 26, 2005)

(construing Delaware law).  Even in the case of insolvency, "breaches of fiduciary duty

remain harms to the company itself and while creditors may be entitled to bring suit, the

nature of the suit remains derivative."  *Id.* at *4; *see Continuing Creditors' Comm. of Star

Telecomms. Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 463 (D. Del. 2004).  "Put simply,

---

[1]      The recitation of Delaware law in *Production Resources* was just cited with approval by the Third Circuit.  *In re: Submicron Sys. Corp.*, 432 F.3d 448, 463 n.17 (3d Cir. Jan. 6, 2006).

when a director of an insolvent corporation, through a breach of fiduciary duty, injures the firm itself, the claim against the director is still one belonging to the corporation." *Production Resources*, 863 A.2d at 792.

While directors ordinarily owe no fiduciary duty directly to any creditor, the *Production Resources* court observed that "there might, possibly exist circumstances in which the directors display such a marked degree of animus towards a particular creditor with a proven entitlement to payment that they expose themselves to a direct fiduciary duty claim by that creditor." *Id.* at 798. The court noted that an intentional effort designed to disadvantage one existing creditor for the benefit of other creditors might give rise to a direct claim. *Id.* at 800. Thus, a direct claim may be stated, if at all, only in situations involving *both* self-dealing discriminatory treatment of creditors and intentional misconduct designed to "'hinder [the creditor's] effort to obtain payment.'" *Fleet Nat'l Bank v. Boyle*, No. 04CV1277LDD, 2005 WL 2455673, at *14 (E.D. Pa. Sept. 12, 2005) (quoting *Production Resources*, 863 A.2d at 800)). Here, DDJ alleges neither self-dealing nor intentional misconduct designed to favor other creditors over DDJ or the Lenders. Absent such "unusual and particularized facts," no direct fiduciary duty claim may be alleged. *Fleet*, 2005 WL 2455673, at *14.

Plaintiff here, however, has sued directly. Plaintiff does not purport to represent all creditors, shareholders, and other interests; nor does Plaintiff purport to have been assigned claims in a bankruptcy proceeding. Rather than allege harm to ARI the corporation, Plaintiff alleges that the "Term B Lenders have been harmed." (Compl. ¶ 37). Plaintiff seeks a judgment not for the bankruptcy estate, but for itself. (Compl.

-8-

prayer).  The claim in the Complaint, therefore, is a direct one for breach of fiduciary duty — a claim that even in the "zone of insolvency," Plaintiff lacks standing to bring.

### B.    The Lenders' Fiduciary Duty Claim Is Barred by Delaware Law and by ARI's Certificate of Incorporation.

Even if Plaintiff did plead a derivative claim, the Complaint does not remotely comply with the substantive and procedural prerequisites for bringing a derivative claim under Delaware law.

Under Delaware law, the certificate of incorporation of a Delaware corporation may contain:

> A provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director: (i) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under § 174 of this title; or (iv) for any transaction from which the director derived an improper personal benefit.

8 *Del. C.* § 102(b)(7).  The Complaint here alleges none of these.[2]  Section 102(b)(7) is designed "to render duty of care claims not cognizable and to preclude plaintiffs from pressing claims of breach of fiduciary duty, absent the most basic factual showing (or reasonable basis to infer) that the directors' conduct was the product of bad faith, disloyalty or one of the other exceptions listed in the statute." *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 734 (Del. Ch. 1999) (footnotes omitted), *aff'd sub nom. Walker v.*

---

[2]    The exception in Section 102(b)(7) for "liability . . . under § 174 of this title" has no application here because 8 *Del C.* § 174 pertains to director liability for unlawful dividend payments or unlawful stock purchases or redemptions.

*Lukens, Inc.*, 757 A.2d 1278 (Del. 2000).  Exculpatory provisions authorized by Section

102(b)(7) "prevent creditors as well as shareholders from bringing duty of care claims."

*Edgecomb*, 385 F. Supp. 2d at 463 (citing *Production Resources*, 863 A.2d at 792–93).

Indeed, Section 102(b)(7) "applies to all actions for which the Plaintiff alleges duty of

care violations." *Edgecomb*, 385 F. Supp. 2d at 463; *see Pereira*, 413 F.3d at 342.

Here, ARI's certification of incorporation,[3] in effect since March 12, 2003,

exculpates ARI's directors to the broadest extent permitted by Section 102(b)(7):

> A director of the Corporation shall not be personally liable
> to the Corporation or its stockholders for monetary
> damages for breach of fiduciary duty as a director, except
> for liability (i) for any breach of the director's duty of
> loyalty to the Corporation or its stockholders, (ii) for acts or
> omissions not in good faith or which involved intentional
> misconduct or a knowing violation of law, (iii) under
> Section 174 of the GCL, or (iv) for any transaction from
> which the director derived an improper personal benefit.

ARI Certificate, Art. VI (Whittaker Decl. Ex. A).

Where an exculpatory provision applies, a plaintiff bears the burden of

pleading facts demonstrating that the exculpatory provision does not foreclose its claim.

*See Malpiede v. Townson*, 780 A.2d 1075, 1093–94 (Del. 2001).  A complaint should be

dismissed if, as here, it lacks well-pleaded allegations establishing a duty of loyalty or

bad-faith claim outside the exculpatory provision.  *Id.* at 1094–96.  Consequently, "if a

shareholder complaint unambiguously asserts only a due care claim, the complaint is

---

[3]      ARI's Amended and Restated Certificate of Incorporation is attached as
Exhibit A to the Declaration of Lisa Whittaker, dated February 15, 2006 ("Whittaker
Decl.").  This Court may take judicial notice of a certificate of incorporation on file with
the Office of the Delaware Secretary of State.  *In re Baxter Int'l, Inc.*, 654 A.2d 1268,
1270 (Del. Ch. 1995).

dismissible once the corporation's Section 102(b)(7) provision is properly invoked." *Emerald Partners v. Berlin*, 787 A.2d 85, 91 (Del. 2001) (emphasis removed).

"To survive a motion to dismiss based upon this standard, where the charter contains a § 102(b)(7) provision, a plaintiff must plead facts that, if true, would imply that a Board *consciously and intentionally disregarded [its] responsibilities*." *Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*, No. Civ.A 20228-NC, 2004 WL 1949290, at *12 (Del. Ch. Aug. 24, 2004) (emphasis and alterations in original). "[P]laintiff must demonstrate that [its] claim against the director defendants falls outside of Section 102(b)(7) by showing 'bad faith, intentional misconduct, or [a] knowing violation of the law' on the part of the defendants." *Karpus v. Borelli (In re Interpublic Sec. Litig.)*, No. 03 Civ. 1194 (DLC), 2004 WL 2397190, at *9 (S.D.N.Y. Oct. 27, 2004) (quoting *In re Baxter Int'l, Inc.*, 654 A.2d 1268, 1270 (Del. Ch. 1995)). Where, as here, the claims "allege solely a violation of the duty of care, and do not also allege the existence of circumstances constituting intentional fraud or self-dealing, then the court will grant defendants' motion to dismiss." *In re Reliance Sec. Litig.*, 91 F. Supp. 2d 706, 732 (D. Del. 2000).

### 1.    The Complaint Does Not Allege Breach of a Duty of Loyalty.

The Complaint does not contend that any Director Defendant breached any duty of loyalty to creditors. A duty of loyalty claim "requires some form of self-dealing or misuse of corporate office for personal gain." *In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 520 n.7 (D. Del. 2001). To state a claim, a plaintiff must "plead facts demonstrating that a *majority* of a board that approved the transaction in dispute was interested and/or lacked independence." *Edgecomb*, 385 F. Supp. 2d at 460

(emphasis original).  Thus, it is usually necessary to show that the director was on both sides of a transaction or received a benefit not received by the shareholders.  *Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002).  Absent allegations that a director had a financial interest in the challenged transaction adverse to the company, a duty of loyalty claim cannot arise.  *Edgecomb*, 385 F. Supp. 2d at 462.  No such allegations appear here.

### 2.    The Complaint Alleges No Intentional Misconduct.

The Complaint likewise alleges no facts that could support a finding of intentional misconduct or a knowing violation of law.  In support of the supposed fiduciary duty claim, the Complaint asserts two theories.  First, DDJ says that the Director Defendants breached their fiduciary duties because the Director Defendants "knew or should have known" that certain information provided to DDJ (by whom, the Complaint does not say) was inaccurate.  (Compl. ¶¶ 2, 22, 25, 35).  Yet the Complaint pleads no *facts* that "raise a sufficient inference of scienter to fall outside the reach of the exculpatory charter provision."  *Production Resources*, 863 A.2d at 799.  The Complaint alleges no facts suggesting why or how the Director Defendants were aware of the supposed inaccuracies in the information provided.  *See Guttman v. Huang*, 823 A.2d 492, 507 (Del. Ch. 2003) (dismissing complaint that "d[id] not plead a single fact suggesting specific red—or even yellow—flags"); *Baxter Int'l*, 654 A.2d at 1270–71 (complaint did not allege "that the directors ignored obvious danger signs").

Indeed, by alleging that the Director Defendants "knew or should have known" about some fact, Plaintiff has invoked the classic language of a negligence theory.  But "even if the plaintiff[] had stated a claim for gross negligence, such a well-pleaded claim is unavailing because defendants have brought forth the . . . charter provision that bars such claims."  *Malpiede*, 780 A.2d at 1094–95; *see also Lukens*,

757 A.2d at 731–32 ("without some factual basis to suspect their motivations, any subsequent finding of liability will, necessarily, depend on finding breaches of the duty of care, not loyalty or good faith"). Moreover, a conclusory accusation of knowledge is not sufficient to overcome the Section 102(b)(7) charter provision. *Arnold v. Society for Savings Bancorp.*, 650 A.2d 1270, 1288 (Del. 1994) (conclusory allegations of knowing or deliberate action are insufficient to deny defendants the protection of an exculpation provision); *McMillan v. Intercargo Corp.*, 768 A.2d 492, 507 (Del. Ch. 2000) ("Although the complaint makes the conclusory allegation that the defendants breached their duty of disclosure in a 'bad faith and knowing manner,' . . . . it does not allege facts from which one can reasonably infer that any such omission resulted from more than a mistake about what should have been disclosed."). As the Chancery Court observed in dismissing similarly unsubstantiated claims:

> Entirely absent from the complaint are well-pled, particularized allegations of fact detailing the precise roles that these directors played at the company, the information that would have come to their attention in those roles, and any indication as to why they would have perceived the accounting irregularities.

*Guttman*, 823 A.2d at 503.

Second, Plaintiff's statements that the Director Defendants "failed to properly manage the Debtors' inventory" or caused certain imprudent sales (Compl. ¶¶ 27, 26) plainly allege only mismanagement claims barred by the exculpatory clause. At the outset, Plaintiff does not even allege that the Director Defendants were or should have been aware of the supposed shortcomings in these transactions. In any event, Delaware courts have flatly rejected such claims in the face of an exculpation provision authorized by Section 102(b)(7):

> Insofar as the complaint explicitly attempts to state a due care claim against the defendant-directors for mismanagement and inadequate oversight, the exculpatory charter provision bars it.

*Production Resources*, 863 A.2d at 798. Simply put, "an exculpatory charter provision preclude[s] creditor claims predicated on mismanagement — *i.e.*, duty of care violations."[4] *Pereira*, 413 F.3d at 342.

## III. THE COMPLAINT LACKS WELL-PLEADED ALLEGATIONS THAT COULD OVERCOME THE BUSINESS JUDGMENT RULE.

A plaintiff challenging acts or omissions by a director of a Delaware corporation must overcome the settled "presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company." *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000)). "Therefore, a party challenging a board decision 'has the burden at the outset to rebut the rule's presumption' by proving that the directors breached 'any one of the triads of their fiduciary duty — good faith, loyalty or due care.'" *In re Hechinger Inv. Co.*, 327 B.R. 537, 549 (D. Del. Bankr. 2005) (quoting *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993)).

As a matter of pleading, the plaintiff must plead sufficient facts from which one can infer "'a reasonable doubt that the challenged transaction was the product

---

[4]    To the extent that Plaintiff seeks to advance some sort of corporate waste theory, that claim also could not survive the Section 102(b)(7) provision. *See, e.g.*, *Edgecomb*, 385 F. Supp. 2d at 465 ("Absent a breach of loyalty, § 102(b)(7) protects directors and officers from a claim of corporate waste.").

-14-

of a valid exercise of business judgment.'"[5] *Edgecomb*, 385 F. Supp. 2d at 459 (quoting *Levine v. Smith*, 591 A.2d 194, 205 (Del. 1991), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000)).   Regardless of whether the mechanics of the demand requirement operate with respect to a corporation in bankruptcy, that requirement's pleading standard still controls a creditor's complaint.  *See Edgecomb*, 385 F. Supp. 2d at 458 (analysis of motion to dismiss creditors' committee's derivative claims "must be informed by precedents arising from derivative actions where the plaintiff alleges that demand should be excused as futile"); *id.* at 457 n.6 (collecting cases).  The Complaint here fails to meet that higher standard.

First, Plaintiff fails even to suggest any basis to conclude that the actions challenged in the Complaint — the preparation of financial statements, managing inventory, or selling products — ever did or should have involved the board members. Indeed, the Complaint does not allege that the Director Defendants prepared or approved the financial statements, or that they had any role whatsoever in the inventory management and product sales referenced in the Complaint.  As a result, the Complaint alleges no facts that could remotely establish irregularities in the Director Defendants'

---

[5]      The extent of this obligation has been the subject of considerable discussion in this Circuit.  Under Delaware law, a plaintiff must plead "particularized facts" demonstrating that the board's decision lacks the protection of the business judgment rule.  *Aronson*, 473 A.2d at 814.  In *Tower Air*, the Third Circuit suggested that at least some of the pleading standards adopted by the Delaware courts are procedural rules that do not apply in federal courts.  416 F.3d at 236.  A recent decision from this Court disagreed with the premise underlying this statement from the Third Circuit, believing that the pleading obligations are not a function of Chancery Court rules, but rather are a substantive element of Delaware law that should be applied by federal courts. *IT Litig. Trust*, 2005 WL 3050611, at *8 n.10.  This debate is academic here, because the Complaint fails to comply with even the liberal federal pleading standard.

actions as board members that would strip them of the protection of the business judgment rule.

Second, even if these routine matters were issues that were or should have been raised with the ARI Board, Plaintiff pleads no facts that could defeat the business judgment presumption. "Delaware courts have said that overcoming the presumptions of the business judgment rule may be accomplished by showing either irrationality or inattention." *Fleet Nat'l*, 2005 WL 2455673, at *15. To show irrationality, a plaintiff must demonstrate that no reasonable businessperson could possibly have authorized the action in good faith, leaving bad faith as the only possible explanation. *Tower Air*, 416 F.3d at 238. To show inattention, a plaintiff must establish that a decision was the product of an irrational process or that directors failed to establish an information and reporting system reasonably designed to provide the senior management and the board with information regarding the corporation's performance. *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967–70 (Del. Ch. 1996).

Taken together, these principles mean that "action may lead to liability where the action or the process that led to it were irrational; inaction may lead to liability where no red flag monitoring system is installed and non-compliance with applicable legal standards results." *Tower Air*, 416 F.3d at 239. Here, Plaintiff's mismanagement pleadings do not allege irrationality or inattention. The Complaint says nothing about ARI's information or reporting systems (Compl. ¶¶ 22, 25, 27), nor does it say that no reasonable businessperson could have caused the Debtors to enter into the unspecified "contracts for the sale of the Debtors' products" that Plaintiff contests (Compl. ¶ 26). As a result, the Complaint fails to plead any cognizable claim.

## CONCLUSION

For the foregoing reasons, the Complaint fails as a matter of law to state any cognizable claim for relief under controlling Delaware law. The Complaint therefore must be dismissed — with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____

Jon E. Abramczyk (#2432)
Lisa Whittaker (#4614)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
*Attorneys for Defendants*
*J. William Uhrig, Steven Langman,*
*and Robert Chambers*

*Of Counsel*

SULLIVAN & CROMWELL LLP
Bruce E. Clark
Brian T. Frawley
Jeremy C. Bates
125 Broad Street
New York, New York 10004-2498
(212) 558-4000

February 15, 2006

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on February 15, 2006 I electronically filed the attached document with the Clerk of the Court using CM/ECF which will send notification of such filing to the following

**BY E-FILING**:

Teresa K.D. Currier (#3080)
Mary F. Caloway (#3059)
KLETT ROONEY LIEBER & SCHORLING
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE  19801


Lisa Whittaker (#4614)