# EXHIBIT A

# Delaware

PAGE 1

### The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL DOCUMENTS FILED FROM AND INCLUDING THE RESTATED CERTIFICATE OR A MERGER WITH A RESTATED CERTIFICATE ATTACHED OF "AMERICAN REMANUFACTURERS, INC." AS RECEIVED AND FILED IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

RESTATED CERTIFICATE, FILED THE ELEVENTH DAY OF MARCH, A.D. 2003, AT 3 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID RESTATED CERTIFICATE IS THE TWELFTH DAY OF MARCH, A.D. 2003, AT 8 O'CLOCK A.M.



2015205  8100X

060070377

Harriet Smith Windsor
Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 4473389

DATE: 01-24-06

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 03:00 PM 03/11/2003
030162477 - 2015205

# AMENDED AND RESTATED CERTIFICATE OF INCORPORATION

## OF

## AMERICAN REMANUFACTURERS, INC.

(Pursuant to Sections 242 and 245 of the General
Corporation Law of the State of Delaware)

The undersigned, being the President and Secretary of AMERICAN REMANUFACTURERS, INC., a corporation organized and existing under the laws of the State of Delaware (hereinafter called the "Corporation"), hereby certifies as follows:

    A.    The name of the Corporation is American Remanufacturers, Inc. The Corporation was originally incorporated under the name "MMR Holding Corporation," and the original Certificate of Incorporation of the Corporation was filed with the Secretary of State of the State of Delaware on August 17, 1983 (the "Original Certificate of Incorporation"). The Original Certificate of Incorporation was restated on December 2, 1993 (the "Restated Certificate of Incorporation"). A Certificate of Amendment of Certificate of Incorporation was filed with the Secretary of State of the State of Delaware on December 30, 1994. A Certificate of Amendment of the Restated Certificate of Incorporation was filed with the Secretary of State of the State of Delaware on April 1, 1997. A Certificate of Amendment of Certificate of Incorporation was filed with the Secretary of State of the State of Delaware on January 29, 1998. A Certificate of Amendment of Certificate of Incorporation was filed with the Secretary of State of the State of Delaware on March 26, 1999. A Certificate of Correction of Certificate of Amendment of Certificate of Incorporation was filed with the Secretary of State of the State of Delaware on April 28, 1999.

    B.    This Amended and Restated Certificate of Incorporation (the "Certificate of Incorporation"), which restates, integrates and further amends the Restated Certificate of Incorporation and subsequent amendments thereto, was duly adopted by action of the Corporation's Board of Directors (the "Board of Directors") and by the written consent of stockholders of the Corporation in accordance with the requirements of Section 228, 242 and 245 of the General Corporation Law of the State of Delaware (the "GCL").

    C.    This Certificate of Incorporation shall be effective as of 8:00 a.m. Eastern Time March 12, 2003.

    D.    The text of the Certificate of Incorporation as heretofore amended or supplemented is hereby amended and restated to read in its entirety as follows:

ARTICLE I

NAME

The name of the Corporation is AMERICAN REMANUFACTURERS,
INC.

ARTICLE II

ADDRESS; REGISTERED OFFICE AND AGENT

The address of the Corporation's registered office in the State of Delaware
is 2711 Centerville Road, Suite 400, City of Wilmington, County of New Castle, State of
Delaware 19808. The name of the Corporation's registered agent at such address is
United States Corporation Company.

ARTICLE III

PURPOSES

The purpose of the Corporation shall be to engage in any lawful act or
activity for which corporations may be organized under the GCL.

ARTICLE IV

CAPITAL STOCK

4.1    Number and Type of Shares. The total number of shares of all
classes of stock that the Corporation shall have authority to issue is Thirty-Three Million
(33,000,000) shares, divided into Five Million (5,000,000) shares of Class A Common
Stock, par value $.01 per share (the "Class A Common Stock"), Four Million (4,000,000)
shares of Class B Common Stock, par value $.01 per share (the "Class B Common
Stock") and Four Million (4,000,000) shares of Class C Common Stock, par value $.01
per share (the "Class C Common Stock" and, together with the Class A Common Stock
and Class B Common Stock, the "Common Stock") and Twenty Million (20,000,000)
shares of Preferred Stock, par value $.01 per share (the "Preferred Stock").

4.2    Preferred Stock. The designation, relative rights, preferences and
limitations of the shares of the Series A Preferred Stock and the Series B Preferred Stock
are as follows:

4.2.1    Series A Preferred Stock.

A.    Number of Shares. The series of Preferred Stock
designated and known as "Series A Preferred Stock" (the "Series A Preferred Stock")
shall consist of Four Million (4,000,000) shares, par value $.01 per share.

B.    Voting.

1.    Subject to the provisions of any applicable law or of the bylaws of the Corporation (the "Bylaws"), as from time to time amended, with respect to the closing of the transfer books or the fixing of a record date for the determination of stockholders entitled to vote, and except as otherwise provided by law or herein, each holder of outstanding shares of Series A Preferred Stock shall be entitled to 500 votes for each share of Series A Preferred Stock standing in his or her name on the books of the Corporation on all matters as to which holders of any class of capital stock have a right to vote, voting with such class or classes as a whole.

2.    Unless the consent or approval of a greater number of shares shall then be required by law, the affirmative vote of the holders of at least 66-2/3% of the outstanding shares of Series A Preferred Stock, voting separately in person or by proxy, at a special or annual meeting of stockholders called for the purpose, shall be necessary to (A) authorize, increase the authorized number of Series A Preferred Stock of, or issue (including on conversion or exchange of any convertible or exchangeable securities or by reason of a merger, consolidation or other reorganization or reclassification) any shares of any class or classes of Senior Stock other than upon the conversion of the Convertible Class C Junior Subordinated Promissory Notes, (B) authorize, adopt or approve an amendment to this Certificate of Incorporation that would increase or decrease the par value of the shares of Series A Preferred Stock, or alter or change the powers, preferences or special rights of the shares of Series A Preferred Stock, or Senior Stock, (C) amend, alter or repeal either directly or as a result of any merger, consolidation or other reorganization or reclassification, the Certificate of Incorporation so as to affect the shares of Series A Preferred Stock adversely, including, without limitation, by granting any voting right to any holder of notes, bonds, debentures or other debt obligations of the Corporation, (D) authorize or issue any security convertible into, exchangeable for or evidencing the right to purchase or otherwise receive any shares of any class or classes of Senior Stock, and (E) effect the voluntary liquidation, dissolution, winding up, recapitalization or reorganization of the Corporation, or the consolidation or merger of the Corporation with or into any other Person, or the sale or other distribution to another Person of all or substantially all of the assets of the Corporation.

C.    Dividends.

1.    The holders of shares of Series A Preferred Stock, in preference to the holders of shares of Common Stock, shall be entitled to receive, when, as and if declared by the Board of Directors, out of the assets of the Corporation legally available therefor, cumulative cash dividends at an annual rate on the Liquidation Preference thereof equal to 10%, calculated on the basis of a 360-day year consisting of twelve 30-day months, accruing and payable in equal annual payments, in immediately available funds, on the last day of December in each year (each such date being referred to herein as an "Annual Dividend Payment Date") commencing on December 31, 2003.

2.    Dividends payable pursuant to Section 4.2.1(C)1 shall begin to accrue and be cumulative from the Issue Date, and shall accrue on a daily basis, in each case whether or not declared. Dividends paid on the shares of Series A Preferred Stock in an amount less than the total amount of such dividends at the time accrued and payable on such shares shall be allocated pro rata on a share-by-share basis among all such shares of Series A Preferred Stock and all shares of capital stock that rank pari passu with respect to the right to receive dividends with the Series A Preferred Stock (including, without limitation, the Series B Preferred Stock) at the time outstanding. The Board of Directors may fix a record date for the determination of holders of shares of Series A Preferred Stock entitled to receive payment of a dividend declared thereon, which record date shall be no more than 60 days nor less than 10 days prior to the date fixed for the payment thereof. Accumulated but unpaid dividends for any past annual dividend periods may be declared and paid at any time, without reference to any regular Annual Dividend Payment Date, to holders of record on such date, not more than 60 days nor less than 10 days preceding the payment date thereof, as may be fixed by the Board of Directors.

3.    The holders of shares of Series A Preferred Stock shall not be entitled to receive any dividends or other distributions except as provided herein.

4.    To the extent prohibited or restricted under any loan, credit or note purchase agreement to which the Corporation or any of its subsidiaries is a party or under any debt instrument of the Corporation or any of its subsidiaries (such agreements and debt instruments collectively referred to herein as "Financing Agreements"), subject to the next sentence of this Section 4.2.1(C)4, the Corporation shall not declare, pay or set apart for payment any dividend on any shares of Series A Preferred Stock or make any payment on account of, or set apart for payment money for a sinking fund or other similar fund for, the purchase, redemption or other retirement of, any shares of Series A Preferred Stock or any warrants, rights, calls or options exercisable for or convertible into any shares of Series A Preferred Stock, or make any distribution in respect thereof, either directly or indirectly, whether in cash, obligations or shares of the Corporation or other property provided that dividends shall accrue during such restriction or prohibition pursuant to a Financing Agreement. The foregoing provisions shall not prohibit the purchase or redemption or repurchase of shares of Series A Preferred Stock (and any warrants, rights, calls or options exercisable for or convertible into shares of Series A Preferred Stock) (i) previously, or substantially concurrently with the issuance of shares of Series A Preferred Stock, issued to any of the members of management of the Corporation or any of its subsidiaries pursuant to any management incentive or employee benefit plan, or (ii) previously, or substantially concurrently with the issuance of shares of Series A Preferred Stock, issued to any holders of debt securities of the Corporation or any of its subsidiaries.

D.    Liquidation; Rank.

1.    The Series A Preferred Stock shall, with respect to rights to receive any dividends or distributions from the Corporation and rights

upon a Liquidation of the Corporation, rank (i) pari passu with the Series B Preferred Stock and (ii) prior to all other classes and series of capital stock of the Corporation now or hereafter authorized. Upon the occurrence of a Liquidation, the holders of shares of Series A Preferred Stock shall be entitled to be paid for each share of Series A Preferred Stock held thereby, an amount in cash equal to the Liquidation Preference, plus all accrued and unpaid dividends, if any and whether or not currently payable, to the date of distribution with respect to each share of Series A Preferred Stock. Upon the completion of the distribution required by Section 4.2.1(D), the Series A Preferred Stock shall not be entitled to any further participation in any distribution of assets of the Corporation.

2.      Neither the consolidation or merger of the Corporation with or into any other Person nor the sale or other distribution to another Person of all or substantially all the assets, property or business of the Corporation, in each case when permitted by Section 4.2.1(B)2, shall be deemed to be a Liquidation for purposes of Sections 4.2.1(D) and 4.2.2(D).

3.      Upon the effective date of any IPO or any Agreed Sale, the Corporation may, at its election, (i) redeem all, but not less than all, of the Series A Preferred Stock for cash at a price per share equal to the Liquidation Preference plus accrued and unpaid dividends as of such date or (ii) exchange all or any portion of the Series A Preferred Stock for shares of Common Stock of such number per share of Series A Preferred Stock so exchanged as, based on the good faith determination of the Board of Directors, have a value equal to the Liquidation Preference plus accrued and unpaid dividends as of such date. The Corporation may elect to redeem or exchange the Series A Preferred Stock by giving notice to such effect to the record holders of the Series A Preferred Stock. If the Corporation elects to so redeem or exchange the Series A Preferred Stock, then from and after the effective date of any IPO or Agreed Sale the shares of Series A Preferred Stock shall represent only the right to receive the redemption price or exchange shares, as applicable. If the Corporation elects to exchange the Series A Preferred Stock for shares of Common Stock, then the fair market value of the Common Stock will be determined in good faith by the Board of Directors, such valuation to be subject to the approval of the Majority A and the Majority C.

E.      Mandatory Transfer.

1.      If at any time a holder of shares of Preferred Stock (i) contributes all of its Subordinated Debt (principal and accrued interest) to the capital of the Corporation pursuant to Section 8.4 of the Merger Agreement (whether voluntarily or otherwise pursuant to the terms of such Subordinated Debt) and (ii) such holder's Indemnification Payment Amount (as defined below) exceeds the principal amount of Subordinated Debt so contributed to the capital of the Corporation with respect to such indemnification claim (a "Mandatory Transfer Event"), there shall be automatically transferred to the Corporation a number of shares (rounded to the nearest whole share) of Preferred Stock of such holder (up to the number of shares held by such holder) equal to (x) such holder's Indemnification Payment Amount less the amount of Subordinated Debt so contributed to the capital of the Corporation by such holder with respect to such indemnification claim divided by (y) the Liquidation Preference plus the

accrued and unpaid dividends on any shares of Preferred Stock to be transferred (the "Transferred Shares"). "Indemnification Payment Amount" means for any particular holder of shares of Preferred Stock, such holder's Indemnification Percentage (as set forth in the terms of such holder's Subordinated Debt) multiplied by the Adjustment Value (as defined in the Merger Agreement) with respect to any particular indemnifiable claim.

2.      Upon the occurrence of a Mandatory Transfer Event, the applicable holder shall promptly surrender to the Corporation, at any place where the Corporation shall maintain a transfer agent for its Preferred Stock, certificates representing the Transferred Shares held by such holder, duly endorsed in blank or accompanied by proper instruments of transfer. All rights of such holder with respect to the Transferred Shares shall cease and terminate, and such holder's Transferred Shares shall be cancelled by the Corporation and shall return to authorized but unissued status. Notwithstanding the foregoing, all rights of such holder with respect to its Transferred Shares shall cease and terminate whether or not the certificates representing such Transferred Shares have been received by the Corporation.

4.2.2   Series B Preferred Stock.

A.      Number of Shares. The series of Preferred Stock designated and known as "Series B Preferred Stock" (the "Series B Preferred Stock") shall consist of Sixteen Million (16,000,000) shares, par value $.01 per share.

B.      Voting. Subject to the provisions of any applicable law or of the Bylaws as from time to time amended, with respect to the closing of the transfer books or the fixing of a record date for the determination of stockholders entitled to vote, and except as otherwise provided by law or herein, each holder of outstanding shares of Series B Preferred Stock shall not be entitled to vote their shares of Series B Preferred Stock.

C.      Dividends.

1.      The holders of shares of Series B Preferred Stock, in preference to the holders of shares of Common Stock, shall be entitled to receive, when, as and if declared by the Board of Directors, out of the assets of the Corporation legally available therefor, cumulative cash dividends at an annual rate on the Liquidation Preference thereof equal to 10%, calculated on the basis of a 360-day year consisting of twelve 30-day months, accruing and payable in equal annual payments, in immediately available funds, on the Annual Dividend Payment Date commencing on December 31, 2003.

2.      Dividends payable pursuant to Section 4.2.2(C)1 shall begin to accrue and be cumulative from the Issue Date, and shall accrue on a daily basis, in each case whether or not declared. Dividends paid on the shares of Series B Preferred Stock in an amount less than the total amount of such dividends at the time accrued and payable on such shares shall be allocated pro rata on a

share-by-share basis among all such shares of Series B Preferred Stock and all shares of capital stock that rank pari passu with respect to the right to receive dividends with the Series B Preferred Stock (including, without limitation, the Series A Preferred Stock) at the time outstanding. The Board of Directors may fix a record date for the determination of holders of shares of Series B Preferred Stock entitled to receive payment of a dividend declared thereon, which record date shall be no more than 60 days or less than 10 days prior to the date fixed for the payment thereof. Accumulated but unpaid dividends for any past annual dividend periods may be declared and paid at any time, without reference to any regular Annual Dividend Payment Date, to holders of record on such date, not more than 60 days nor less than 10 days preceding the payment date thereof, as may be fixed by the Board of Directors.

      3.  The holders of shares of Series B Preferred Stock shall not be entitled to receive any dividends or other distributions except as provided herein.

      4.  To the extent prohibited or restricted under any Financing Agreements, subject to the next sentence of this Section 4.2.2(C)4, the Corporation shall not declare, pay or set apart for payment any dividend on any shares of Series B Preferred Stock or make any payment on account of, or set apart for payment money for a sinking fund or other similar fund for, the purchase, redemption or other retirement of any shares of Series B Preferred Stock or any warrants, rights, calls or options exercisable for or convertible into any shares of Series B Preferred Stock, or make any distribution in respect thereof, either directly or indirectly, whether in cash, obligations or shares of the Corporation or other property provided that dividends shall accrue during such restriction or prohibition pursuant to a Financing Agreement. The foregoing provisions shall not prohibit the purchase or redemption or repurchase of shares of Series B Preferred Stock (and any warrants, rights, calls or options exercisable for or convertible into shares of Series B Preferred Stock) (i) previously, or substantially concurrently with the issuance of shares of Series B Preferred Stock, issued to any of the members of management of the Corporation or any of its subsidiaries pursuant to any management incentive or employee benefit plan, or (ii) previously, or substantially concurrently with the issuance of shares of Series B Preferred Stock, issued to any holders of debt securities of the Corporation or any of its subsidiaries.

     D.  Liquidation; Rank.

      1.  The Series B Preferred Stock shall, with respect to rights to receive any dividends or distributions from the Corporation and rights upon a Liquidation of the Corporation, rank (i) pari passu with the Series A Preferred Stock and (ii) prior to all other classes and series of capital stock of the Corporation now or hereafter authorized. Upon the occurrence of a Liquidation, the holders of shares of Series B Preferred Stock shall be entitled to be paid for each share of Series B Preferred Stock held thereby, an amount in cash equal to the Liquidation Preference, plus all accrued and unpaid dividends, if any and whether or not currently payable, to the date of distribution with respect to each share of Series B Preferred Stock. Upon the completion

of the distribution required by Section 4.2.2(D), the Series B Preferred Stock shall not be entitled to any further participation in any distribution of assets of the Corporation.

        2.      Neither the consolidation nor merger of the Corporation with or into any other Person nor the sale or other distribution to another Person of all or substantially all the assets, property or business of the Corporation in each case when permitted by Section 4.2.1(B)2, shall be deemed to be a Liquidation for purposes of Sections 4.2.1(D) and 4.2.2(D).

        3.      Upon the effective date of any IPO or any Agreed Sale, the Corporation may, at its election, (i) redeem all, but not less than all of the Series B Preferred Stock for cash at a price per share equal to the Liquidation Preference plus accrued and unpaid dividends as of such date or (ii) exchange all or any portion of the Series B Preferred Stock for shares of Common Stock of such number per share of Series B Preferred Stock so exchanged as, based on the good faith determination of the Board of Directors, have a value equal to the Liquidation Preference plus accrued and unpaid dividends as of such date. The Corporation may elect to redeem or exchange the Series B Preferred Stock by giving notice to such effect to the record holders of the Series B Preferred Stock. If the Corporation elects to so redeem or exchange the Series B Preferred Stock, then from and after the effective date of any IPO or Agreed Sale the shares of Series B Stock shall represent only the right to receive such redemption price or exchange shares, as applicable. If the Corporation elects to exchange the Series B Preferred Stock for shares of Common Stock, then the fair market value of the Common Stock will be determined in good faith by the Board of Directors, such valuation to be subject to the approval of the Majority A and the Majority C.

        E.      <u>Mandatory Transfer</u>.

        1.      Upon the occurrence of a Mandatory Transfer Event with respect to a holder of Series B Preferred Stock, there shall be automatically transferred to the Corporation such holder's Transferred Shares.

        2.      Upon the occurrence of a Mandatory Transfer Event, the applicable holder shall promptly surrender to the Corporation, at any place where the Corporation shall maintain a transfer agent for its Preferred Stock, certificates representing the Transferred Shares held by such holder, duly endorsed in blank or accompanied by proper instruments of transfer. All rights of such holder with respect to the Transferred Shares shall cease and terminate, and such holder's Transferred Shares shall be cancelled by the Corporation and shall return to authorized but unissued status. Notwithstanding the foregoing, all rights of such holder with respect to its Transferred Shares shall cease and terminate whether or not the certificates representing such Transferred Shares have been received by the Corporation.

        4.3     <u>Definitions</u>. As used in this Certificate of Incorporation, the following terms shall have the following meanings (with terms defined in the singular having comparable meanings when used in the plural and <u>vice versa</u>), unless the context requires otherwise:

(a)    The following terms shall have the meanings indicated:

"Agreed Sale" shall mean: (i) any merger or consolidation of the Corporation with any other Person in which the holders of capital stock of the Corporation immediately prior to such merger or transaction do not hold a majority of the Voting Stock of the surviving entity or (ii) any sale of all or substantially all of the assets of the Corporation, in either case, approved by the Majority A and the Majority C, or (iii) any other Sale of the Corporation (as defined by the Securityholders Agreement) pursuant to the terms and provisions of the Securityholders Agreement.

"Annual Dividend Payment Date" shall have the meaning given such term in Section 4.2.1(C)1.

"ARI Credit Agreement" means the Amended and Restated Credit Agreement, dated as of July 16, 2001, among ARI Holdings, General Electric Capital Corporation and the other parties listed therein, as amended, supplemented or otherwise modified from time to time.

"Board of Directors" shall have the meaning given such term in the preamble to this Agreement.

"Budget" shall have the meaning given such term in Section 9.1.7.

"Business Day" shall mean any day other than a Saturday, Sunday or other day on which commercial banks in the City of New York are authorized or required by law or executive order to close.

"Bylaws" shall have the meaning given such term in Section 4.2.1(B)1.

"CCT Credit Agreement" shall mean the Loan Agreement by and between CCT and the Bank of New Hampshire, dated as of June 22, 2001, as amended, supplemented or otherwise modified from time to time.

"Certificate of Incorporation" shall mean this Second Amended and Restated Certificate of Incorporation, as from time to time further restated and amended hereafter.

"Class A Common Stock" shall have the meaning given such term in Section 4.1.

"Class B Common Stock" shall have the meaning given such term in Section 4.1.

"Class C Common Stock" shall have the meaning given such term in Section 4.1.

"Class I Directors" shall have the meaning given such term in Section 5.1.1.

"Class II Directors" shall have the meaning given such term in Section 5.1.1.

"Class III Directors" shall have the meaning given such term in Section 5.1.1.

"Class IV Director" shall have the meaning given such term in Section 5.1.1.

"Common Stock" shall have the meaning given such term in Section 4.1.

"Convertible Class C Junior Subordinated Promissory Notes" shall mean the Convertible Class C Second Priority Junior Subordinated Promissory Notes issued pursuant to the Recapitalization Agreement.

"Cooling Period" shall have the meaning given such term in Article X.

"Corporation" shall have the meaning given such term in the preamble to this Agreement.

"Critical Issues" shall have the meaning given such term in Section 9.1.

"Current Line of Business" shall have the meaning given such term in Section 9.1.2.

"Debt" shall mean, as of any date, (without duplication) with respect to any Person, any indebtedness outstanding (other than Subordinated Debt, the Class A Senior Subordinated Promissory Notes of the Corporation, issued pursuant to the Exchange Agreement, dated as of March 12, 2003, by and among the Corporation and the other parties listed therein, and the Convertible Class C Subordinated Promissory Notes of the Corporation, issued pursuant to the Recapitalization Agreement), secured or unsecured, contingent or otherwise, which is: (i) for borrowed money; (ii) evidenced by bonds, notes, debentures or similar instruments; or (iii) representing the balance deferred and unpaid of the purchase price of any property (excluding, without limitation, any balances that constitute trade payables) and shall also include, to the extent not otherwise included, all indebtedness of others for borrowed money, the payment of which is guaranteed, directly or indirectly, by such Person or that is otherwise its legal liability or which such Person has agreed to purchase or repurchase or in respect of which such Person has agreed contingently to supply or advance funds (whether or not such items would appear upon the balance sheet of the guarantor). The amount of Debt of any Person at any date shall be the outstanding principal balance at such date of all unconditional obligations as described above and the maximum principal liability upon the occurrence of the contingency giving rise to the obligation, provided, however, that the amount outstanding at any time of any Debt issued with any original issue discount is the principal amount of such Debt less the remaining unamortized portion of the original issue discount of such Debt at such time as determined in conformity with United States generally accepted accounting principles. Notwithstanding any other provision of the

foregoing definition, for the purposes of the definition of "Debt" (i) (x) any trade payable arising from the purchase of goods or materials or for services obtained in the ordinary course of business and (y) any salaries and related employment taxes accrued in the ordinary course of business shall not be included as or deemed to be Debt and (z) letters of credit in accordance with the terms of the ARI Credit Agreement and the CCT Credit Agreement shall not be included as or deemed to be "Debt"; and (ii) the amount representing a net negative cash balance determined by checks or other authorized cash disbursements in excess of available cash funds shall be included as and deemed to be "Debt."

"Filing Date" shall mean the date of filing of this Certificate of Incorporation with the Secretary of State of the State of Delaware.

"Financing Agreements" shall have the meaning given such term in Section 4.2.1(C)4.

"GCL" shall have the meaning given such term in the preamble hereto.

"Indemnification Payment Amount" shall have the meaning given such term in Section 4.2.1(E)1.

"Indemnification Percentage" shall have the meaning given such term in the Merger Agreement.

"IPO" shall mean an initial offering of the Corporation's Common Stock or the common stock of ARI Holdings, Inc. registered under the Securities Act of 1933, as amended, other than an offering registered on Form S-4 or S-8 or any similar or successor form.

"Issue Date" shall mean (a) with respect to any shares of Preferred Stock outstanding as of the Filing Date, the Filing Date and (b) with respect to any shares of Preferred Stock issued on or after the Filing Date, the first date on which such shares of Preferred Stock are issued (and any dividends which have accrued or become cumulative prior to the Filing Date shall be deemed not to have accrued or become cumulative and shall not be payable by the Corporation).

"Liquidation" shall mean the voluntary or involuntary liquidation of the Corporation (whether or not under applicable bankruptcy or reorganization legislation now or hereafter in effect), or the dissolution or winding up of the Corporation.

"Liquidation Preference" shall mean $10.

"Majority A" shall have the meaning given such term in Section 5.1.1.

"Majority C" shall have the meaning given such term in Section 5.1.1.

"Mandatory Transfer Event" shall have the meaning given such term in Section 4.2.1(E)1.

"Merger Agreement" shall mean the Agreement and Plan of Merger, dated as of March 12, 2003, by and among the Corporation, Car Component Technologies, Inc. and the other parties named therein.

"Non-Removing Class" shall have the meaning given such term in Article X.

"Original Certificate of Incorporation" shall have the meaning given such term in the preamble to this Agreement.

"Other Entity" shall have the meaning given such term in Section 11.1.

"Person" shall mean any individual, firm, corporation, partnership, limited liability company, trust, incorporated or unincorporated association, joint venture, joint stock company, government (or an agency or political subdivision thereof) or other entity of any kind, and shall include any successor (by merger or otherwise) of such entity.

"Preferred Stock" shall have the meaning given such term in Section 4.1.

"Proceeding" shall have the meaning given such term in Section 11.1.

"Recapitalization Agreement" shall mean the Recapitalization and Voting Agreement, dated as of March 12, 2003, by and among the Corporation and the other parties listed therein.

"Removal Notice" shall have the meaning given such term in Article X.

"Removing Class" shall have the meaning given such term in Article X.

"Securityholders Agreement" shall mean the Securityholders Agreement, dated as of the Filing Date, among the Corporation and the stockholders listed therein.

"Senior Lender" shall mean General Electric Capital Corporation.

"Senior Stock" shall mean the Series A Preferred Stock and the Series B Preferred Stock.

"Series A Preferred Stock" shall have the meaning given such term in Section 4.2.1(A).

"Series B Preferred Stock" shall have the meaning given such term in Section 4.2.2(A).

"Subordinated Debt" shall mean the Subordinated Debt (as defined in the Merger Agreement) and the Convertible Class C Junior Subordinated Promissory Notes of the Corporation.

"Transferred Shares" shall have the meaning given such amount in Section 4.2.1(E)1.

"Voluntary Liquidation Event" shall have the meaning given such term in Section 4.4.1(D)2.

"Voting Stock" shall mean capital stock (or similar interests) having the power under ordinary circumstances to elect the directors (or Persons serving an analogous function) of any Person.

"2003 Stock Option Pool" shall mean the 2003 Stock Option Pool adopted by the Board of Directors and stockholders of the Corporation with the prior consent of the Majority A and the Majority C.

4.4    Common Stock. The designation, relative rights, preferences and limitation of the shares of each class of Common Stock are as follows:

4.4.1    Class A Common Stock.

A.    Number of Shares. The Class A Common Stock shall consist of Five Million (5,000,000) shares, par value $.01 per share.

B.    Voting. Subject to the provisions of the Certificate of Incorporation (as from time to time amended) with respect to the Critical Issues and the election of directors, any applicable law or of the Bylaws as from time to time amended, with respect to the closing of the transfer books or the fixing of a record date for the determination of stockholders entitled to vote, and except as otherwise provided by law or herein, each holder of outstanding shares of Class A Common Stock shall be entitled to one vote for each share of Class A Common Stock standing in his or her name on the books of the Corporation on all matters to which holders of any class of capital stock have a right to vote, voting with such classes as a whole.

C.    Dividends. Whenever annual dividends payable on shares of Preferred Stock as provided in Sections 4.2.1(C) and 4.2.2(C) are not paid in full, at such time and thereafter until all unpaid dividends payable, whether or not declared on the outstanding shares of Preferred Stock shall have been paid in full or declared and set apart for payment, the Corporation shall not declare or pay dividends, or make any other distributions, on any shares of Class A Common Stock.

D.    Liquidation; Rank.

1.    With respect to dividend rights and rights upon a Liquidation, shares of Class A Common Stock shall rank (i) junior to all Preferred Stock and (ii) pari passu with the Class B Common Stock and Class C Common Stock. In the event of any Liquidation, after payment shall have been made to the holders of shares of Preferred Stock of the full amount to which they are entitled pursuant to this Certificate of Incorporation, the holders of shares of Common Stock shall be entitled, to the exclusion of the holders of shares of Preferred Stock, to share, ratably according to

the number of shares of Common Stock held by them, in all remaining assets of the Corporation available for distribution to its stockholders.

2.    If the Corporation shall commence a [voluntary case under the United States bankruptcy laws or any applicable bankruptcy, insolvency or similar law of any other country, or consent to the entry of an order for relief in an involuntary case under any such law or to the appointment of a receiver, liquidator, assignee, custodian, trustee, sequestrator (or other similar official) of the Corporation or of any substantial part of its property, or make an assignment for the benefit of its creditors, or admit in writing its inability to pay its debts generally as they become due (any such event, a "Voluntary Liquidation Event"), or if a decree or order for relief in respect of the Corporation shall be entered by a court having jurisdiction in the premises in an involuntary case under the United States bankruptcy laws or any applicable bankruptcy, insolvency or similar law of any other country, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or other similar official) of the Corporation or of any substantial part of its property, or ordering the winding up or liquidation of its affairs, and on account of any such event the Corporation shall liquidate, dissolve or wind up, or if the Corporation shall otherwise liquidate, dissolve or wind up], no distribution shall be made to the holders of shares of Class A Common Stock, unless, prior thereto, the holders of shares of Preferred Stock shall have received the Liquidation Preference, plus all accrued and unpaid dividends, whether or not declared or currently payable, to the date of distribution, with respect to each share.

3.    Neither the consolidation nor merger of the Corporation with or into any other Person nor the sale or other distribution to another Person of all or substantially all the assets, property or business of the Corporation, in each case when permitted by Section 4.2.1(B)2, shall be deemed to be a Liquidation of the Corporation for purposes of this Section 4.4.1(D).

4.4.2    Class B Common Stock.

A.    Number of Shares.  The Class B Common Stock shall consist of Four Million (4,000,000) shares, par value $.01 per share.

B.    Voting.  Subject to the provisions of any applicable law or of the Bylaws as from time to time amended, with respect to the closing of the transfer books or the fixing of a record date for the determination of stockholders entitled to vote, and except as otherwise provided by law or herein, each holder of outstanding shares of Class B Common Stock shall not be entitled to vote their shares of Class B Common Stock.

C.    Dividends.  Whenever annual dividends payable on shares of Preferred Stock as provided in Sections 4.2.1(C) and 4.2.2(C) are not paid in full, at such time and thereafter until all unpaid dividends payable, whether or not declared on the outstanding shares of Preferred Stock, shall have been paid in full or declared and set apart for payment, the Corporation shall not declare or pay dividends, or make any other distributions, on any shares of Class B Common Stock.

D.    Liquidation; Rank.

1.    With respect to dividend rights and rights on a Liquidation, shares of Class B Common Stock shall rank: (i) junior to the Preferred Stock; and (ii) pari passu with the Class A Common Stock and Class C Common Stock. In the event of any Liquidation, after payment shall have been made to the holders of shares of Preferred Stock of the full amount to which they are entitled pursuant to this Certificate of Incorporation, the holders of shares of Common Stock shall be entitled, to the exclusion of the holders of shares of Preferred Stock, to share, ratably according to the number of shares of Common Stock held by them, in all remaining assets of the Corporation available for distribution to its stockholders.

2.    If the Corporation shall commence a Voluntary Liquidation Event, or if a decree or order for relief in respect of the Corporation shall be entered by a court having jurisdiction in the premises in an involuntary case under the United States bankruptcy laws or any applicable bankruptcy, insolvency or similar law of any other country, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or other similar official) of the Corporation or of any substantial part of its property, or ordering the winding up or liquidation of its affairs, and on account of any such event the Corporation shall liquidate, dissolve or wind up, or if the Corporation shall otherwise liquidate, dissolve or wind up, no distribution shall be made to the holders of shares of Class B Common Stock unless, prior thereto, the holders of shares of Preferred Stock shall have received the Liquidation Preference, plus all accrued and unpaid dividends, whether or not declared or currently payable, to the date of distribution, with respect to each share.

3.    Neither the consolidation or merger of the Corporation with or into any other Person nor the sale or other distribution to another Person of all or substantially all the assets, property or business of the Corporation, in each case when permitted by Section 4.2.1(B)2, shall be deemed to be a liquidation, dissolution or winding up of the Corporation for purposes of this Section 4.4.2(D).

4.4.3   Class C Common Stock.

A.    Number of Shares. The Class C Common Stock shall consist of Four Million (4,000,000) shares, par value $.01 per share.

B.    Voting. Subject to the provisions of the Certificate of Incorporation (as from time to time amended) with respect to the Critical Issues and the election of directors, any applicable law or of the Bylaws as from time to time amended, with respect to the closing of the transfer books or the fixing of a record date for the determination of stockholders entitled to vote, and except as otherwise provided by law or herein, each holder of outstanding shares of Class C Common Stock shall be entitled to one vote for each share of Class C Common Stock standing in his or her name on the books of the Corporation on all matters on which holders of any class of capital stock have a right to vote, voting with such classes as a whole.

C.    Dividends.  Whenever annual dividends payable on shares of Preferred Stock as provided in Sections 4.2.1(C) and 4.2.2(C) are not paid in full, at such time and thereafter until all unpaid dividends payable, whether or not declared on the outstanding shares of Preferred Stock shall have been paid in full or declared and set apart for payment, the Corporation shall not declare or pay dividends, or make any other distributions, on any shares of Class C Common Stock.

D.    Liquidation; Rank.

1.    With respect to dividend rights and rights on Liquidation, shares of Class C Common Stock shall rank (i) junior to all Preferred Stock and (ii) pari passu with the Class A Common Stock and Class B Common Stock.  In the event of any Liquidation, after payment shall have been made to the holders of shares of Preferred Stock of the full amount to which they are entitled pursuant to this Certificate of Incorporation, the holders of shares of Common Stock shall be entitled, to the exclusion of the holders of shares of Preferred Stock, to share, ratably according to the number of shares of Common Stock held by them, in all remaining assets of the Corporation available for distribution to its stockholders.

2.    If the Corporation shall commence a Voluntary Liquidation Event, or if a decree or order for relief in respect of the Corporation shall be entered by a court having jurisdiction in the premises in an involuntary case under the United States bankruptcy laws or any applicable bankruptcy, insolvency or similar law of any other country, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or other similar official) of the Corporation or of any substantial part of its property, or ordering the winding up or liquidation of its affairs, and on account of any such event the Corporation shall liquidate, dissolve or wind up, or if the Corporation shall otherwise liquidate, dissolve or wind up, no distribution shall be made to the holders of shares of Class C Common Stock, unless, prior thereto, the holders of shares of Preferred Stock shall have received the Liquidation Preference, plus all accrued and unpaid dividends, whether or not declared or currently payable, to the date of distribution, with respect to each share.

3.    Neither the consolidation or merger of the Corporation with or into any other Person nor the sale or other distribution to another Person of all or substantially all the assets, property or business of the Corporation, in each case when permitted by Section 4.2.1(B)2 shall be deemed to be a liquidation, dissolution or winding up of the Corporation for purposes of this Section 4.4.3(D).

4.5    Redemption of Common Stock.  Upon the effective date of any Agreed Sale, the Corporation shall have the right, but not the obligation, to redeem, to the extent permitted under applicable law, all, but not less than all of the Common Stock for consideration at a price per share equal to the pro rata net proceeds of such Agreed Sale less debt, amounts payable to holders of Preferred Stock and other obligations of the Corporation.  The Corporation may exercise such redemption right by notice to such effect to the record holders of the Common Stock.  If such redemption right is so

exercised, then from and after the effective date of such Agreed Sale the shares of Common Stock shall represent only the right to receive such redemption price.

## ARTICLE V

## DIRECTORS

5.1   Board of Directors.  The business and affairs of the Corporation shall be managed by a Board of Directors comprised as follows:

5.1.1   Number.  The Board of Directors shall (i) consist of seven (7) directors and (ii) be divided into four (4) classes, designated Class I, Class II, Class III and Class IV.  Class I shall consist of two (2) directors, Class II shall consist of two (2) directors, Class III shall consist of two (2) directors and Class IV shall consist of one (1) director, elected as follows:  (a) the majority in voting power of the outstanding shares of Class A Common Stock and the Series A Preferred, voting together as a separate class ("Majority A") shall be entitled to elect the Class I Directors ("Class I Directors"), (b) the majority in voting power of the outstanding shares of Class C Common Stock voting as a separate class  ("Majority C") shall be entitled to elect the Class II Directors ("Class II Directors"), (c) Majority A and Majority C shall each be entitled to elect one (1) Class III Director each of whom shall constitute an independent director (together, the "Class III Directors") and (c) Majority A and Majority C shall be entitled to jointly elect the Class IV Director ("Class IV Director").

5.1.2   Quorum of Directors.  The presence in person of a majority of the entire board, including at least one (1) of the Class I Directors and at least one (1) of the Class II Directors shall be necessary and sufficient to constitute a quorum for the transaction of business at any meeting of the Board.

5.1.3   Vacancies.  Any vacancies of the Board of Directors resulting from death, resignation, retirement, disqualification, removal from office or other cause shall be filled only by the holders of a majority of the voting power of the outstanding shares of the separate class of capital stock then entitled to vote in the election of such director, and directors so chosen shall hold office for a term expiring at the next annual meeting of stockholders and until such director's successor shall have been duly elected and qualified.

5.1.4   Removal.  Any director, or the entire Board of Directors, may be removed from office at any time without cause by the affirmative vote of the holders of a majority of the voting power of its outstanding shares of the separate class (or classes) of capital stock then entitled to vote in the election of such director and with cause by the affirmative vote of the holders of a majority of the voting power of its outstanding shares of capital stock then entitled to vote in the election of any directors.

5.2   Amendments.  Notwithstanding any other provisions of this Certificate of Incorporation or any provision of law which might otherwise permit a lesser vote or no vote, but in addition to any affirmative vote of the holders of Common

Stock required by law or this Certificate of Incorporation, the affirmative vote of each director shall be required to alter, amend or repeal this Article V.

## ARTICLE VI

### LIMITATION OF LIABILITY

A director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involved intentional misconduct or a knowing violation of law, (iii) under Section 174 of the GCL, or (iv) for any transaction from which the director derived an improper personal benefit. If the GCL is amended to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Corporation shall be eliminated or limited to the fullest extent permitted by the GCL, as so amended. Any repeal or modification of this Article VI by the stockholders of the Corporation shall not adversely affect any right or protection of a director of the Corporation with respect to events occurring prior to the time of such repeal or modification.

## ARTICLE VII

### ADOPTION, AMENDMENT AND/OR REPEAL OF THE BY-LAWS

The Board of Directors may from time to time make, amend or repeal the Bylaws; provided, however, that: (i) any Bylaws made, amended or repealed by the Board of Directors may be amended or repealed, and any Bylaws may be made, by the stockholders of the Corporation by the affirmative vote or written consent of both Majority A and Majority C; and (ii) the Bylaws, as amended from time to time, may not conflict or be inconsistent with the provisions of the Certificate of Incorporation, as amended from time to time. To the extent that any provision of the Bylaws conflicts or is inconsistent with any provision of the Certificate of Incorporation, each as amended from time to time, the provisions of the Certificate of Incorporation shall govern and control.

## ARTICLE VIII

### MEETING OF STOCKHOLDERS

Unless otherwise provided in this Certificate of Incorporation, any action required to be taken at any annual or special meeting of stockholders of the Corporation may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding Common Stock having not less than a minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted.

Doc #:NY6:385357.27                                    18

ARTICLE IX

SPECIAL STOCKHOLDER APPROVAL PROVISIONS

9.1    The Corporation shall not, and shall not permit any of its subsidiaries to, take any of the following actions considered critical issues ("Critical Issues"), or agree to take any Critical Issue, in each case, without the prior consent of both Majority A and Majority C, except (i) with respect to the transactions required in connection with the consummation of the Merger Agreement and (ii) to the extent that the Board of Directors delegates a matter to management, which delegation shall be considered a Critical Issue:

9.1.1    M&A Activities. Any transaction of merger (except a merger under Section 253 of the GCL), consolidation, acquisition, partnership, joint venture or strategic alliance with, or into one or more persons, sale or transfer of any capital stock of any subsidiaries or all or a substantial portion of the assets in any transaction or series of related transactions, except with respect to any transactions effected in accordance with Section 3.1 of the Securityholders Agreement, which provision shall govern and control such transaction.

9.1.2    Change in Business Focus. Engaging in any business other than or substantially related to manufacturing, distributing, or marketing of products to the domestic or international automotive and heavy duty aftermarket ("Current Line of Business");

9.1.3    Changes in Equity Capitalization. Except (w) as required under the terms of 2003 Stock Option Pool or any other employee equity incentive plan, in each case, approved of by the prior written consent of Majority A and Majority C, (x) as required under the terms of the Gladstone Option (as defined in the Merger Agreement), (y) the issuance of Series B Preferred Stock in connection with the conversion of the Convertible Class C Junior Subordinate Promissory Notes of the Corporation or (z) the issuance of Series B Preferred Stock in exchange for Subordinated Debt, (i) any issuance of or agreement to issue any capital stock (including any treasury stock or securities or rights of any kind convertible into or exchangeable for any capital stock), including, without limitation, in connection with (A) an initial public offering, or in securities or rights of any kind convertible into or exchangeable for any capital stock, including, without limitation, the adoption of any new stock option or other equity compensation plan, (ii) declaration or payment of any dividends or other distributions on or in respect of any capital stock except to the Corporation or any other subsidiary; or (iii) redeem, purchase, repurchase or otherwise acquire for value any capital stock or right to acquire any capital stock (other than pursuant to an employee benefit plan, agreement or arrangement which was approved by the prior written consent of both Majority A and Majority C, Article 8 of the Merger Agreement or Sections 4.2.1(E) or 4.2.2(E));

9.1.4    Bankruptcy. Any reorganization or any voluntary Liquidation under applicable bankruptcy or reorganization legislation now or hereafter in effect, any determination to not contest an involuntary petition of bankruptcy, any

dissolution or winding up, any assignment for the benefit of creditors or an admission of inability to generally pay its debts as they become due;

        9.1.5  Debt.  Any increase in Debt, other than ordinary course working capital financing or capital expenditure financing in accordance with the Budget (as defined below), any loans, advances to or guarantees for the benefit of any Person, other than travel advances and similar loans to employees in the normal course of business or pursuant to Article XI, or any amendment to the material terms of any indebtedness, including without limitation any subordination agreement relating thereto;

        9.1.6  Capital Expenditures.  Any acquisition of assets or capital stock of any entity not provided for in the Budget;

        9.1.7  Budget Approval.  Approval of an annual business plan, budget, strategic plan, and capital expenditures plan (collectively, the "Budget");

        9.1.8  Changes to Organizational Documents.  Any amendment, modification or restatement to the Certificate of Incorporation, Bylaws or other charter documents (including by merger, consolidation or otherwise) which would adversely affect the rights, preferences or privileges of any class of capital stock or any modification of the number of directors constituting the entire Board of Directors;

        9.1.9  Management Hiring, Compensation and Transactions With Affiliates.  Any (i) appointment of and removal of the Chief Executive Officer or Chief Financial Officer (except as set forth in Article X, which provision shall govern), (ii) determination of the terms and amount of any compensation, including stock option grants and participation in the 2003 Stock Option Pool approved by the prior written consent of the Majority A and the Majority C for the Chief Executive Officer and Chief Financial Officer, (iii) adoption of any additional or replacement management compensation or incentive plans and (iv) transaction or arrangement (including compensation, incentive plans and benefit arrangements) between the Corporation, or any subsidiary, on the one hand, and (A) any stockholder or director, other than the Senior Lender or any of its affiliates, (B) any members of the immediate family of any stockholder or director and (C) except as otherwise provided in this Article 9, any affiliate of any stockholder or director, other than the Senior Lender or any of its affiliates.

        9.1.10  Change in Auditor or Accounting Methods.  Any appointment of or any change in the independent public auditors or any material change in the accounting methods or policies (including any change of fiscal year) not required by GAAP;

        9.1.11  Regulatory Matters.  Any matters affecting the regulatory status of the Corporation or any of its subsidiaries or any of its security holders;

        9.1.12  Tax Matters.  Any tax matters that are material to the Corporation and its subsidiaries taken as a whole;

9.1.13 <u>Audit</u>. Approval and adoption of the annual audit;

9.1.14 <u>Leases</u>. Entering into or canceling of any major lease, the values of which exceeds $200,000;

9.1.15 <u>Advisors</u>. Hiring of accounting, tax, legal and investment banking advisors for any significant matter, except with respect to Article X, which provision shall govern;

9.1.16 <u>Litigation</u>. Settlement of any lawsuit; and

9.1.17 <u>Required Stockholder Vote</u>. Any other matter or transaction (but specifically excluding the election of directors) requiring a vote of stockholders pursuant to the GCL.

9.2    The Corporation shall not, and shall not permit any of its subsidiaries to, take any action requiring the approval of the Board of Directors and the Corporation shall not permit any of its subsidiaries to take any action requiring the approval of the board of directors of such subsidiary that is not a Critical Issue without the consent of at least one Class I Director; <u>provided</u>, <u>however</u>, that the Class I Directors will advise the Class II Directors prior to any failure to approve such an action on the part of the Class I Directors, and the Class I Directors will only fail to approve such an action after reasonable attempts to achieve consensus within the Board of Directors.

9.3    With respect to any provision of this Certificate of Incorporation requiring the consent of Majority A or Majority C, subject to applicable law, the vote of Majority A will not be required if the matter is approved by the affirmative vote of each of the Class I Directors and the vote of Majority C will not be required if the matter is approved by the affirmative vote of each of the Class II Directors unless said directors specifically notify the Board of Directors in advance of such vote that the respective approval of Majority A (in the case of a Class I Director) or Majority C (in the case of a Class II Director) will be required.

ARTICLE X

CHANGE IN CHIEF EXECUTIVE OFFICER
OR CHIEF FINANCIAL OFFICER

Majority A or Majority C has the right to request the removal of the Chief Executive Officer or the Chief Financial Officer of the Corporation by written notice to the other class majority (the "<u>Removal Notice</u>" and the requesting class majority, the "<u>Removing Class</u>"). The other class majority (the "<u>Non-Removing Class</u>") will have ten (10) days from the date of its receipt of the Removal Notice to accept or reject the Removal Notice by written notice to the Removing Class. In the event that the Non-Removing Class rejects the Removal Notice, the Removing Class shall make an attempt to work towards a consensus for a period of three months (the "<u>Cooling Period</u>"). If no consensus is reached at the end of the Cooling Period, then the Removing Class

may unilaterally remove the Chief Executive Officer or the Chief Financial Officer, as the case may be.

## ARTICLE XI

## INDEMNIFICATION

11.1 <u>Proceedings</u>. To the extent not prohibited by law, the Corporation shall indemnify any person who is or was made, or threatened to be made, a party to any threatened, pending or completed action, suit or proceeding (a "<u>Proceeding</u>"), whether civil, criminal, administrative or investigative, including, without limitation, an action by or in the right of the Corporation to procure a judgment in its favor, by reason of the fact that such person, or a person of whom such person is the legal representative, is or was a director or officer of the Corporation, or, at the request of the Corporation, is or was serving as a director or officer of any other corporation or in a capacity with comparable authority or responsibilities for any partnership, joint venture, trust, employee benefit plan or other enterprise (an "<u>Other Entity</u>"), against judgments, fines, penalties, excise taxes, amounts paid in settlement and costs, charges and expenses (including attorneys' fees, disbursements and other charges). Persons who are not directors or officers of the Corporation (or otherwise entitled to indemnification pursuant to the preceding sentence) may be similarly indemnified in respect of service to the Corporation or to an Other Entity at the request of the Corporation to the extent the Board at any time specifies that such persons are entitled to the benefits of this Article XI.

11.2 <u>Expenses</u>. The Corporation shall, from time to time, reimburse or advance to any director or officer or other person entitled to indemnification hereunder the funds necessary for payment of expenses, including attorneys' fees and disbursements, incurred in connection with the defense of Proceeding, in advance of the final disposition of such Proceeding; <u>provided</u>, <u>however</u>, that, if required by the GCL, such expenses incurred by or on behalf of any director or officer or other person may be paid in advance of the final disposition of a Proceeding only upon receipt by the Corporation of an undertaking, by or on behalf of such director or officer (or other person indemnified hereunder), to repay any such amount so advanced if it shall ultimately be determined by final judicial decision from which there is no further right of appeal that such director, officer or other person is not entitled to be indemnified for such expenses.

11.3 <u>Non-Exclusivity</u>. The rights to indemnification and reimbursement or advancement of expenses provided by, or granted pursuant to, this Article XI shall not be deemed exclusive of any other rights to which a person seeking indemnification or reimbursement or advancement of expenses may have or hereafter be entitled under any statute, this Certificate of Incorporation, the Bylaws, any agreement, any vote of stockholders or disinterested directors or otherwise, both as to action in his or her official capacity and as to action in another capacity while holding such office.

11.4 <u>Terms of Indemnification</u>. The rights to indemnification and reimbursement or advancement of expenses provided by, or granted pursuant to, this Article XI shall continue as to a person who has ceased to be a director or officer (or

Doc #:NY6:385357.27

other person indemnified hereunder) and shall inure to the benefit of the executors, administrators, legatees and distributees of such person.

11.5    Insurance. The Corporation shall have power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of an Other Entity, against any liability asserted against such person and incurred by such person in any such capacity, or arising out of such person's status as such, whether or not the Corporation would have the power to indemnify such person against such liability under the provisions of this Article XI, the Bylaws or under Section 145 of the GCL or any other provision of law.

11.6    Contract. The provisions of this Article XI shall be a contract between the Corporation, on the one hand, and each director and officer who serves in such capacity at any time while this Article XI is in effect and any other person entitled to indemnification hereunder, on the other hand, pursuant to which the Corporation and each such director, officer, or other person intend to be, and shall be, legally bound. No repeal or modification of this Article XI shall affect any rights or obligations with respect to any state of facts then or theretofore existing or thereafter arising or any proceeding theretofore or thereafter brought or threatened based in whole or in part upon any such state of facts.

11.7    Enforceability. The rights to indemnification and reimbursement or advancement of expenses provided by, or granted pursuant to, this Article XI shall be enforceable by any person entitled to such indemnification or reimbursement or advancement of expenses in any court of competent jurisdiction. The burden of proving that such indemnification or reimbursement or advancement of expenses is not appropriate shall be on the Corporation. Neither the failure of the Corporation (including the Board of Directors, its independent legal counsel and its stockholders) to have made a determination prior to the commencement of such action that such indemnification or reimbursement or advancement of expenses is proper in the circumstances nor an actual determination by the Corporation (including the Board of Directors, its independent legal counsel and its stockholders) that such person is not entitled to such indemnification or reimbursement or advancement of expenses shall constitute a defense to the action or create a presumption that such person is not so entitled. Such a person shall also be indemnified for any expenses incurred in connection with successfully establishing his or her right to such indemnification or reimbursement or advancement of expenses, in whole or in part, in any such proceeding.

11.8    Subsidiaries and Other Persons. Any director or officer of the Corporation serving in any capacity of (a) another corporation of which a majority of the shares entitled to vote in the election of its directors is held, directly or indirectly, by the Corporation or (b) any employee benefit plan of the Corporation or any corporation referred to in clause (a) shall be deemed to be doing so at the request of the Corporation.

11.9    Applicable Law. Any person entitled to be indemnified or to reimbursement or advancement of expenses as a matter of right pursuant to this

Doc #:NY6:385357.27

Article XI may, to the extent permitted by law, elect to have the right to indemnification or reimbursement or advancement of expenses interpreted on the basis of the applicable law in effect at the time of the occurrence of the event or events giving rise to the applicable Proceeding or on the basis of the applicable law in effect at the time such indemnification or reimbursement or advancement of expenses is sought. Such election shall be made, by a notice in writing to the Corporation, at the time indemnification or reimbursement or advancement of expenses is sought; provided, however, that if no such notice is given, the right to indemnification or reimbursement or advancement of expenses shall be determined by the law in effect at the time indemnification or reimbursement or advancement of expenses is sought.

IN WITNESS WHEREOF, the undersigned has signed and acknowledged this Restated Certificate of Incorporation as of this 11ᵀᴴ day of March, 2003.

AMERICAN REMANUFACTURERS, INC.

By: _____

Timothy K. Campbell    , President

ATTEST:

_____

Ronald A. Searcy, Secretary